IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PINKNEY CLOWERS, III,<br><br>    *Defendant.* | **CASE NO.**<br>**5:92-cr-00082-TES-CHW-2** |

## ORDER GRANTING MOTION TO REDUCE SENTENCE

Before the Court is Defendant Pinkney Clowers' Motion to Reduce Sentence [Doc. 1072], filed pursuant to 18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13(b)(6). After considerable briefing, oral argument, and consideration of the applicable law and sentencing guidelines, the Court **GRANTS** Clowers' motion, reduces his sentence to time served, and **ORDERS** his immediate release.

### BACKGROUND

More than 30 years ago, a jury convicted then 21-year-old Clowers of four crimes related to a drug conspiracy that occurred from June 1988 to June 1992. [Doc. 428]. Among other things, and most importantly for this motion, a jury convicted Clowers of Count 18, "engag[ing] in a continuing criminal enterprise . . . from which . . . [he] obtained substantial income and resources" in violation of 21 U.S.C. § 848(a). *See* [Doc. 220]. A violation of that criminal statute mandated a life sentence even if the enterprise

from which a defendant derived "substantial income" included only 1.5 kilograms of cocaine base, commonly referred to as "crack." [Doc. 1000, p. 24 ¶ 163]; [Doc. 1053, p. 2]. As his other convictions were vacated, Count 18 and its mandated life sentence is the only one at issue today.

Clowers began participating in this conspiracy as a lookout when he was only 15 years old—by far its youngest member. His co-defendants were at least 4 years older than him, and some were as much as 11 years his senior. Even though the jury ultimately found him to be an organizer and leader of the conspiracy, one of his co-defendants, Calvin Boyd, has now stated, in support of Clowers' motion, that "Clowers was never a leader or organizer of anyone . . . ." [Doc 1072-1, p. 2]. While not the only defendant in the conspiracy to receive a life sentence, Clowers was the only one to receive a life sentence who did *not* shoot, rape, or kill someone during the conspiracy. In what can only be fairly described as the absolute height of injustice, the murderers, robbers, and rapists in the conspiracy have all long been released under the retroactive application of the Fair Sentencing Act or a motion under Federal Rule of Criminal Procedure 35. *See* Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372. *Only* Clowers remains in prison, and to that, Mr. Boyd even went as far to say, "It cannot be overstated that . . . Clowers should have been the first one out, not the last." [*Id.*].

At Clowers' sentencing hearing, a case agent testified that he trafficked more than 15 kilograms of crack cocaine. That drug-quantity finding from his sentencing

hearing has prevented the Court from granting him a compassionate release or relief under the First Step Act, as compared to his more culpable co-defendants. The Court must note that the drug-quantity finding resulted from an estimate given by the case agent, as well as based on the testimony of an inmate, William Smith, who had a 24-year sentence for armed robberies halved due to his cooperation.[1] Clowers objected to the finding, stating that "what's in the Presentence Report is an estimate by the authorities that is not necessarily backed up by the trial record" and that "the only crack actually introduced in the trial was a bag that was found during a search by one of the Bibb County deputy sheriffs." [Doc. 555, p. 5:7–9, 12–14]. Nonetheless, because the court, without the help of a jury, found that Clowers had trafficked at least 15 kilograms of crack—well above the 1.5 kilogram minimum to trigger a life sentence—it had no choice (then) but to sentence him to life in prison.

Now 52 years old, Clowers has exhibited model behavior as a prisoner: he obtained his GED, earned more than 1,400 days of good-time credit, and participated in over 900 hours of programming offered by the Bureau of Prisons. Further, he has only received two disciplinary reports in his 31 years spent in federal prison—the last one in 1994 for possessing a cigarette lighter.

Clowers has petitioned this Court for relief on several occasions, and

---

[1] Mr. Smith also testified that Clowers made over $175,000.00 a week from selling crack, yet, notably, he apparently could not afford an attorney to represent him at his trial. [Doc. 1072-1, p. 2].

unfortunately, the law, as previously written, did not permit such relief to be granted.

Not that long ago, this Court lamented, "[u]ntil and if Congress modifies the First Step

Act or passes other legislation, . . . Clowers' sole remaining option for release appears to

lie completely within the pardon and commutation powers of the President of the

United States." [Doc. 1053, p. 9]. This is no longer the case. Fortunately for Clowers, the

United States Sentencing Commission, as of November 2023, has amended and enacted

a Guideline that allows the Court to finally release him after serving more than ten

years of an unusually long sentence.

### LEGAL STANDARD

"The authority of a district court to modify an imprisonment sentence is

narrowly limited by statute." *United States v. Phillips*, 597 F.3d 1190, 1194–95 (11th Cir.

2010). Usually, once a court hands down its sentence, it's final and cannot be modified.

18 U.S.C. § 3582(c). In legal terms, that's it.

Yet, "compassionate release exists for the purpose of releasing incarcerated

individuals when continued imprisonment no longer serves the goals of our justice

system. Section 3582(c)(1)(A)(i) of the 1984 Sentencing Reform Act codifies this

process." *United States v. Harper*, No. 1:04-cr-00218-SDG, 2024 WL 1053547, at *1 (N.D.

Ga. Mar. 11, 2024). The First Step Act, passed by Congress in 2018, expanded the scope

of 18 U.S.C. § 3582(c)(1)(A) in an attempt to increase "the use and transparency of

compassionate release." First Step Act of 2018, Pub. L. No. 115-391, § 603, 132 Stat. 5194

4

(Dec. 21, 2018).

Prior to pursuing relief under 18 U.S.C. § 3582, a defendant must first exhaust his administrative remedies. *United States v. Harris*, 989 F.3d 908, 911 (11th Cir. 2021). A court may reduce a sentence under 18 U.S.C. § 3582(c)(1)(A) upon a motion of the Director of the Bureau of Prisons. Alternatively, a defendant can bring the motion on his own behalf if he has exhausted all administrative rights to appeal the director's failure to bring such a motion, or if 30 days have passed from the receipt of such request by the warden of the defendant's facility, whichever is earlier. *Id.*

Once the exhaustion requirement is met, a district court may reduce a defendant's sentence after considering the factors set forth in 18 U.S.C. § 3553(a)— to the extent they are applicable—if a court "finds that 'extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" Order at 3, *United States v. Parson*, No. 95–08089–CR, (S.D. Fla. Apr. 19, 2024), ECF No. 1905 (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Congress instructed the Sentencing Commission to issue a policy statement describing "what should be considered extraordinary and compelling reasons for sentence reduction." *United States v. Aruda*, 993 F.3d 797, 800 (9th Cir. 2021) (quoting 28 U.S.C. § 994(t)).

The Sentencing Commission complied and listed the "extraordinary and compelling reasons for sentence reduction" "in . . . the accompanying Application

Notes" of § 1B1.13 of the United States Sentencing Guidelines. *United States v. Colley*,

No. 2:94-cr-7-RWS, 2024 WL 116128, at *2 (N.D. Ga. Mar. 26, 2024). After Congress

passed the First Step Act, the Sentencing Commission amended U.S.S.G. § 1B1.13 to add

two new "extraordinary and compelling" reasons for reducing a sentence, bringing the

total to six: "(1) the defendant's medical circumstances, (2) advanced age, (3) family

circumstances, (4) whether the defendant is a victim of abuse, (5) 'other reasons,' and (6)

whether the defendant received an unusually long sentence." *See* 18 U.S.C. §

3582(c)(1)(A)(i). The defendant carries the "burden to show that his circumstances

warrant a sentence reduction." *United States v. Alonge*, No. 21-13566, 2022 WL 1135533,

at *1 (11th Cir. Apr. 18, 2022) (citing 18 U.S.C. § 3582(c)(1)(A)(i)); *United States v. Green*,

764 F.3d 1352, 1356 (11th Cir. 2014).

Even if a court finds that a defendant has offered extraordinary and compelling

reasons for a sentence reduction as found in U.S.S.G. § 1B1.13(b), a district court must

still consider "all applicable" 18 U.S.C. § 3553(a) factors. The court must consider "the

seriousness of the offense, promoting respect for the law, providing just punishment,

affording adequate deterrence, protecting the public from the defendant's further

crimes, and providing the defendant with appropriate correctional treatment." *Colley*,

2024 WL 116128, at *5–6. It should also consider "the 'nature and circumstances' of the

offense and the 'history and characteristics' of the defendant," as well as "the types of

sentences available, the applicable guideline range, any pertinent policy statement

issued by the Sentencing Commission, the need to avoid unwarranted sentencing

disparities, and the need to provide restitution to victims." *United States v. Taylor*, 997

F.3d 1348, 1354 (11th Cir. 2021) (citations omitted).

## DISCUSSION

To simplify, compassionate release may be granted by a district court after

exhaustion of administrative remedies and the defendant has shown that: "(1)

extraordinary and compelling reasons warrant a reduction; (2) the reduction would be

consistent with [U.S.S.G.] § 1B1.13's policy statements; and (3) the [18 U.S.C.] § 3553(a)

factors weigh in favor of the reduction." *Colley*, 2024 WL 116128, at *6 (citing *United

States v. Tinker*, 14 F.4th at 1234, 1237 (11th Cir. 2021)).

### A.    Exhaustion of Administrative Remedies

On February 1, 2024, Clowers' counsel mailed, faxed, and emailed Warden

Shannon Withers at the Federal Correctional Institution Coleman Medium a request for

the Bureau of Prisons to file this motion for sentence reduction. [Doc. 1072, p. 10]. More

than 30 days passed without any action from the Bureau of Prisons, so Clowers filed his

own motion for a sentence reduction quickly followed by two supplemental letters

containing additional grounds for release. [*Id.*]. The Government doesn't argue that

Clowers failed to administratively exhaust his remedies, and rightfully so. The Court

easily finds that Clowers properly filed his motion for a sentence reduction under 18

U.S.C. § 3582(c)(1)(A).

### B.    Validity of Sentencing Guideline Section 1B1.13(b)(6)

Let's begin with the text of the relevant Sentencing Guidelines at issue in this case. Effective November 1, 2023, the Sentencing Commission recently amended U.S.S.G. § 1B1.13(b) to add a new category of "extraordinary and compelling" reasons that could justify reducing a sentence:

> **(6) Unusually Long Sentence.**—*If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment*, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6) (emphasis added).

The Government once again argues that the Court should deny Clowers' motion for sentence reduction because it contends that the Sentencing Commission exceeded its authority when it promulgated U.S.S.G. § 1B1.13(b)(6). The Government argues that "the authority that Congress conferred on the Sentencing Commission in 28 U.S.C. §§ 994(a)(2)(C), & (t)—the source of the Commission's authority to promulgate the recent amendments to U.S.S.G. § 1B1.13—is limited" because qualifying reasons must be "extraordinary and compelling" as stated in 18 U.S.C. § 3582(c)(1)(A)(i). [Doc. 1077, p. 15]. The Government contends that "[n]onretroactive changes in sentencing law are neither" extraordinary nor compelling. [*Id.*]. Yet, to its credit, the Government candidly

8

admits that "several district courts" within the Eleventh Circuit have rejected this argument.[2] [*Id.* at p. 17 n.7].

As Clowers correctly noted in his Reply [Doc. 1078], a claim that "several district courts" have rejected the Government's argument would be "an understatement." [Doc. 1078, p. 7]. At the time Clowers filed his Reply, there were at least 18 of the Court's colleagues who had already rejected the Government's position that the Sentencing Commission exceeded its delegated authority. Like its colleagues, this Court holds that the Sentencing Commission did not exceed its delegated authority when it adopted U.S.S.G. § 1B1.13(b)(6). "[T]he Eleventh Circuit has never held that nonretroactive changes cannot be extraordinary and compelling reasons"; thus, it follows that nonretroactive changes in the law can qualify as extraordinary and compelling reasons. *United States v. Allen*, --- F.Supp.3d ----, 2024 WL 631609, at *5, (N.D. Ga. Feb. 12, 2024), at *5. To do otherwise, as Chief Judge Timothy Batten explained in *Allen*, "would require courts to ignore the policy statement that Congress explicitly directed the [Sentencing] Commission to create." *Id.* The Court agrees and expressly adopts his excellent reasoning.

Having decided that the Sentencing Commission properly and validly added the new amendments to U.S.S.G. § 1B1.13(b), the Court now turns to the more important

---

[2] When it comes to this level of candor, the Court would expect nothing less from the Government's counsel. Both enjoy well-earned and well-deserved reputations for upholding the highest ethical and professional standards of our most noble profession.

question of whether U.S.S.G. § 1B1.13(b)(6) applies to Clowers.

      C.    **Applicability of U.S.S.G. § 1B1.13(b)(6)**

Easy stuff first. Section 1B1.13(b)(6) requires Clowers to have served ten years of an unusually long sentence. Here, Clowers has already served that amount three times over, and the Government even concedes that 31 years is "more than sufficient punishment for his crimes." [Doc. 1077, p. 2].

In determining whether the sentence is unusually long, U.S.S.G. § 1B1.13(b)(6) allows a court to consider an intervening change in law that has created a gross disparity in sentencing. As a reminder, the Sentencing Commission further specified in U.S.S.G. § 1B1.13(c) that, "[i]f a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." Thus, the Court can apply a nonretroactive change in law in considering whether a defendant's sentence is unusually long.

Here, the intervening change of law rests with the Sixth Amendment right to a jury finding of any fact that increases a mandatory minimum sentence, as held in *Alleyne v. United States*, 570 U.S. 99 (2013). In Clowers' case, a judge made a finding as to the quantity of drugs based on evidence provided by the case agent at Clowers' sentencing hearing, and no jury ever passed on the question. If Clowers were to be

sentenced today on Count 18, *Alleyne* would mandate that a jury determine the particular quantity of drugs based on any amount alleged in the indictment. *See* [Doc. 220] [Doc 428]. Count 18 charged him with engaging in a continuing criminal enterprise and had several cross-referenced counts. [Doc. 220]. Only Count One charged him with possession of a controlled substance—and did so without specifying the drug quantity. If he were to be sentenced today under his indictment, the Court would not be faced with sentencing him to mandatory life under 21 U.S.C. § 848(b) because that would require a *jury* to conclude there was at least 8.4 kilograms of crack. Instead, the Court would only be faced with sentencing him to the statutory minimum of 20 years under 21 U.S.C. § 848(a). Thus, the drug quantity finding by the judge, which would now be found unconstitutional under *Alleyne*, raised his mandatory minimum from a 20-year sentence to one for life. This is a disparity that is glaringly noticeable.

However, the Government doesn't contest that Clowers would not receive a mandatory life sentence under *Alleyne* today. Instead, the Government argues that *Alleyne* cannot be categorized as a "change in the law" but as "errors that occurred at sentencing." [Doc. 1077, p. 22].

The *Parson* order recently rejected a similar argument. In that case, the Southern District of Florida held that *Alleyne*'s predecessor and predicate, *Apprendi v. New Jersey*, 530 U.S. 466 (2000), qualified as a "change in the law." Order at 9, *United States v. Parson*, No. 9:95-cr-08089, (S.D. Fla. Apr. 19, 2024), ECF No. 1905. In *Apprendi*, the United States

Supreme Court held that a *jury* must find any fact that would increase a mandatory *maximum* sentence. 530 U.S. at 490. Similarly, the Supreme Court held in *Alleyne* that a *jury* must find any fact that would increase a mandatory *minimum*. 570 U.S. 99, at 111–15. For the same reasons that *Apprendi* was a "change in law," so was *Alleyne*. *See* Order at 9, *United States v. Parson*, No. 9:95-cr-08089, (S.D. Fla. Apr. 19, 2024), ECF No. 1905. Today, under *Alleyne*, any finding of a specific drug quantity that would mandate any increase in a mandatory minimum sentence must be made by a jury—that would certainly seem to qualify as a change in the law. After all, Supreme Court rulings that disallow judges to find drug quantities and require juries to undertake that task must represent definitive "changes" in sentencing law.

This change in the law make Clowers' life sentence unusually long due to the gross disparity in the sentence he received then and the one he would likely receive today, considering the application of *Alleyne*. The now-improper drug-quantity finding at his sentencing hearing increased his sentence from a minimum of 20 years to life. Other district courts within the Eleventh Circuit held "that the difference between a life sentence and any sentence less than life is glaringly noticeable." *See, e.g., Allen*, 2024 WL 631609, at *4–5; *United States v. Vanholten* (discussing that "difference of a generation [20 years] . . . no doubt makes for a gross disparity"); *United States v. Rahim* (discussing that 18-year difference in sentencing was held as a gross disparity). Thus, this Court finds that a difference of a 20-year minimum sentence and a mandatory life sentence is a

gross disparity, especially when one recalls that Clowers was only 21 years old when he

was sentenced to life in prison. The Court readily concedes that a life sentence in and of

itself is not always "unusually long."[3] But, in this case, Clowers was a young and

healthy 19-year-old man when he was indicted and only 21 when sentenced. In this

case, the Court easily concludes that Clowers' sentence qualifies as "unusually long",

which is as an extraordinary and compelling reason under U.S.S.G. 1B1.13(b)(6) for the

Court to reduce his sentence.

    **D.**    <u>**Section 3553(a) Factors**</u>

Now that Clowers has shown an extraordinary and compelling reason to reduce

his sentence, § 3582(c)(1)(A)(i) requires the Court to consider the factors in 18 U.S.C. §

3553(a):

> (1) the nature and circumstances of the offense and the history and
> characteristics of the defendant; (2) the need to reflect the seriousness of the
> offense, to promote respect for the law, and to provide just punishment for
> the offense; (3) the need for deterrence; (4) the need to protect the public; (5)
> the need to provide the defendant with needed educational or vocational
> training or medical care; (6) the kinds of sentences available; (7) the
> Sentencing Guidelines range; (8) pertinent policy statements of the
> Sentencing Commission; (9) the need to avoid unwanted sentencing
> disparities; and (10) the need to provide restitution to victims.

Courts, however, are not required to discuss each and every factor nor are they required

to discuss all mitigating evidence. Order at 11, *United States v. Parson*, No. 9:95-cr-08089,

---

[3] Consider, for example, a young defendant with an irreversible and terminal condition or an elderly
defendant with a short life expectancy.

(S.D. Fla. Apr. 19, 2024), ECF No. 1905. "Instead, an acknowledgement by the Court that it has considered" the factors provided by 18 U.S.C. § 3553(a) "and the parties' arguments is ordinarily sufficient." *Id.; see also Tinker*, 14 F.4th at 1241.

In response to Clowers' motion, the Government candidly acknowledged "that the sentence . . . Clowers has served is more than sufficient punishment for his crimes." [Doc 1077, p. 2]. This indicates that the Government agrees that the public safety and other 18 U.S.C. § 3553 factors do not bar Clowers' release. As this Court stated four years ago, Clowers "has been a model prisoner over the last 27 years," and it hasn't changed its opinion. [Doc. 1053, p. 8]. The Court is "especially persuaded by the fact that" despite his life sentence, his "good behavior has all occurred without the hope of early release." Order at 13, *United States v. Parson*, No. 9:95-cr-08089, (S.D. Fla. Apr. 19, 2024), ECF No. 1905. For most, a life sentence "'means denial of hope; it means that good behavior and character are immaterial[.]'" *Graham v. Florida*, 560 U.S. 48, 70 (2010) (quoting *Naovarath v. State*, 779 P.2d 944, 944 (Nev. 1989)). As this Court has already explained, Clowers has exhibited model behavior and rehabilitation while incarcerated instead of considering such behavior immaterial or pointless due to his life sentence. Therefore, upon consideration of any and all applicable factors under 18 U.S.C. § 3553(a), the Court finds that they support a sentence reduction for Clowers.

CONCLUSION

Clowers exhausted administrative remedies by filing his motion after the

Director of the Bureau of Prisons failed to file it upon request. Thus, he satisfied the

procedural requirements of 18 U.S.C. § 3582(c)(1)(A). Clowers has met his burden under

U.S.S.G § 1B1.13(b)(6) because he has served well over ten years of an unusually long

sentence. The Court has considered the intervening change in law under *Alleyne* that

highlights just why Clowers' sentence is unusually long. Undoubtedly, a gross disparity

exists between the sentence he received in 1993 versus the one he would likely be given

today. Lastly, the Government agrees that Clowers has already served sufficient time

for his crimes.

The Court heartily agrees and finds that public safety and other 18 U.S.C. § 3553

factors do not require Clowers to serve additional time over the considerable amount

already served. Bottom line: "Continued imprisonment no longer serves the goals of

our justice system . . . ." *Harper*, 2024 WL 1053547, at *1. Accordingly, the Court

**GRANTS** Pinkney Clowers, III's Motion to Reduce Sentence [Doc. 1072] pursuant to 18

U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13(b)(6) and reduces his sentence from life to

time served.[4] Now that the Court has granted the motion for compassionate release, the

Court sees no reason to refer to "*Defendant* Clowers" any longer. Having spent more

---

[4] Clowers must still complete the supervised portion of his sentence.

than 32 years in prison, *Mr.* Clowers has paid his penal debt to the United States in full and it's time for him to go home. The Court **ORDERS** his immediate release.

     **SO ORDERED**, this 18th of July, 2024.

     TILMAN E. SELF, III, JUDGE
     UNITED STATES DISTRICT COURT

16